*Appeal No. 23-55772*

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KYLAND YOUNG, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

NEOCORTEXT, INC.,

*Defendant-Appellant.*

_____

**On Appeal from the United States District Court
for the Central District of California, No. 2:23-cv-02496 (Hsu, W.)**

_____

## OPENING BRIEF OF DEFENDANT-APPELLANT NEOCORTEXT, INC.

Kathryn J. Fritz
kfritz@fenwick.com
Tyler G. Newby
tnewby@fenwick.com
Mary Griffin
mgriffin@fenwick.com
Nicholas Antonio Santos
nsantos@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

*Attorneys for Defendant-Appellant
NeoCortext, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellant NeoCortext, Inc. certifies that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Date: December 14, 2023

FENWICK & WEST LLP

*/s/Tyler G. Newby*

*Attorneys for Defendant-Appellant*
*NeoCortext, Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................................i

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ...........................................................3

STATEMENT OF THE ISSUES...............................................................4

PERTINENT STATUTORY PROVISIONS ...........................................4

STATEMENT OF THE CASE...................................................................5

      A.    Neocortext And The Reface App.................................................5

      B.    Plaintiff's Lawsuit And The District Court's Denial Of Neocortext's Anti-Slapp Motion. ...........................................6

SUMMARY OF THE ARGUMENT ......................................................8

STANDARD OF REVIEW ......................................................................10

ARGUMENT .............................................................................................10

    I.    Appellant Demonstrated That Plaintiff's Claim Arises From Protected Activity...............................................................11

      A.    The District Court Correctly Held That NeoCortext Satisfied The Threshold Showing That Plaintiff's Claim Arises From An Act In Furtherance Of The Right Of Free Speech In Connection With An Issue Of Public Interest. ...........................................................12

          1.    The District Court Correctly Held That NeoCortext's Conduct Was In Furtherance Of Free Speech Rights. .......................................13

          2.    Plaintiff's Claim Concerns An Issue Of Public Interest. ...............................................................15

## TABLE OF CONTENTS
### (Continued)

Page

II. The District Court Erred In Ruling That Plaintiff Demonstrated A Probability Of Prevailing On His Right Of Publicity Claim. .......................................................................16

    A. The Copyright Act Preempts Plaintiff's Claim. ......................17

        1. Plaintiff's Claim Falls Within The Subject Matter Of Copyright. ......................................................17

        2. The Rights Asserted Under State Law Are Equivalent To The Rights Within The Scope of Copyright. ..............................................................24

    B. Reface And Its Uses Are Creative, Transformative Expression That The First Amendment Protects. .....................26

        1. California's Right of Publicity Statute Is a Content-Based Restriction on Speech That Is Subject to Strict Scrutiny Review..................................26

        2. Even Under the Intermediate Transformative Use Analysis, Reface is Entitled to First Amendment Protection From Plaintiff's Right of Publicity Claim. .............................................................27

    C. Plaintiff Failed To Plead A Prima Facie Violation Of His Right of Publicity. ...............................................................31

CONCLUSION .......................................................................................32

CERTIFICATE OF COMPLIANCE FOR BRIEFS ................................35

ADDENDUM OF PERTINENT STATUTORY PROVISIONS............................36

ADDENDUM TABLE OF CONTENTS ................................................37

# TABLE OF AUTHORITES

**Pages**

## Cases

*Andersen v. Stability AI Ltd.*,
  No. 23-cv-00201-WHO, 2023 WL 7132064 (N.D. Cal. Oct. 30, 2023)............19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................20, 31

*Berry v. City of New York*,
  97 F.3d 689 (2d Cir. 1996) ......................................................................14

*Bonilla v. Ancestry.com Operations Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021)......................................................24

*Bonni v. St. Joseph Health Sys.*,
  11 Cal. 5th 995, 281 Cal. Rptr. 3d 678 (2021) ......................................11

*City of Cotati v. Cashman*,
  29 Cal. 4th 69, 124 Cal. Rptr. 2d 519 (2002) ........................................13

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) ..................................................................26, 27, 28

*DC Comics v. Pac. Pictures Corp.*,
  706 F.3d 1009 (9th Cir. 2013) ................................................................10

*Equilon Enters. v. Consumer Cause, Inc.*,
  29 Cal. 4th 53, 124 Cal. Rptr. 2d 507 (2002) ........................................12

*ETW Corp. v. Jireh Pub., Inc.*,
  332 F.3d 915 (6th Cir. 2003) ..................................................................14

*Fields v. City of Philadelphia*,
  862 F.3d 353 (3d Cir. 2017) ...................................................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Greater Los Angeles Agency on Deafness, Inc., v.*
*Cable News Network, Inc.*,
742 F.3d 414 (9th Cir. 2014) ....................................................13, 14

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ..............................................3, 15, 30

*Jordan-Benel v. Univ. City Studios, Inc.*,
859 F.3d 1184 (9th Cir. 2017) ....................................................10

*Kirby v. Sega of Am., Inc.*,
144 Cal. App. 4th 47, 50 Cal. Rptr. 3d 607 (2006) ...............27, 28, 29

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ......................................................10

*Laws v. Sony Music Ent., Inc.*,
448 F.3d 1134 (9th Cir. 2006) ..............................................18, 23

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156, 1 Cal. Rptr. 3d 536 (2003) ..........................13

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) ......................................................10

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ................................................*passim*

*Manufactured Home Communities, Inc. v. City of San Diego*,
655 F.3d 1171 (9th Cir. 2011) ....................................................16

*Metabolife Int'l, Inc. v. Wormick*,
264 F.3d 832 (9th Cir. 2001) ......................................................10

*Mindy Cosms., Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ......................................................11

*Montz v. Pilgrim Films & Television, Inc.*,
649 F.3d 975 (9th Cir. 2011) ......................................................17

v

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Park v. Board of Trustees of Cal. State Univ.*,
  2 Cal. 5th 1057, 217 Cal. Rptr. 3d (2017) ...................................................11, 13

*Planet Aid, Inc. v. Reveal*,
  44 F.4th 918 (9th Cir. 2022) ...............................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..............................................................................11

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)............................................................................................26

*Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps.*,
  105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003) .........................................15

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ........................................................................26, 27

*Tamkin v. CBS Broad., Inc.*,
  193 Cal. App. 4th 133, 122 Cal. Rptr. 3d 264 (2011) .......................................13

*Taus v. Loftus*,
  40 Cal. 4th 683, 54 Cal. Rptr. 3d 775 (2007) ...................................................16

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................11

*White v. City of Sparks*,
  500 F.3d 953 (9th Cir. 2007) ..............................................................................14

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) ..........................................................................26, 27, 28, 29

**Statutes**

17 U.S.C. § 102 ..............................................................................................17, 18

17 U.S.C. § 103 ....................................................................................................17

17 U.S.C. § 106 ........................................................................................17, 24, 25

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

17 U.S.C. § 301 ...............................................................................*passim*

Cal. Civ. Code § 3344 ...............................................................6, 18, 31

Cal. Civ. Proc. Code § 425.16 .........................................................*passim*

## Other Authorities

4 Nimmer on Copyright § 19D.03 (rev. ed. 2010) ..................................17

U.S. Const. amend. I .......................................................................*passim*

U.S. Const. amend. XIV .......................................................................26

## INTRODUCTION

Defendant-Appellant NeoCortext, Inc. operates Reface, a mobile app that lets users swap their faces for other people's faces in photographs and short video clips sourced from television programs, movies, and Internet memes. In the version of the app at issue in this case, a user could, for example, insert his face in place of an actor's face in a clip from a TV show and create an entirely new clip starring the user's face. The resulting photos and videos, whether humorous or surprising, are undeniably creative expressions that both the First Amendment and California's statute prohibiting strategic lawsuits against public participation ("SLAPP") protect.

Plaintiff-Appellee Kyland Young is an actor who appeared in the CBS television series *Big Brother*, scenes of which were available for Reface users to modify by replacing their faces for his. Through this suit, Plaintiff has sought to use California's right of publicity law to elevate his interest in his image and likeness above the rights of the copyright owner of *Big Brother* and over NeoCortext and its users' First Amendment rights to make derivative and transformative works. Neither the preemption clause of the Copyright Act nor the First Amendment permits the expansive interpretation of California's right of publicity law that Plaintiff advances. For that reason, NeoCortext moved to strike Plaintiff's complaint under California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16.

The district court correctly held that Plaintiff's claim arises from Reface's expressive activity that California's anti-SLAPP law protects, but it erred when it concluded that Plaintiff has a probability of prevailing on the merits. First, the district court erred by applying an overly narrow federal copyright preemption analysis that strayed from this Court's precedents. The court held that the placement of a watermark that identifies Reface as the app used to create the work on the user-created, face-swapped photo or video is commercial advertising that is outside the scope of copyright preemption. But the bare factual allegations of the complaint do not support this conclusion. Plaintiff nowhere alleges that NeoCortext itself disseminates advertisements using Plaintiff's image or likeness. Moreover, the alleged product or service being advertised is the ability to display, reproduce and make derivative works of copyrighted photographs and videos, bringing them squarely within the subject matter of federal copyright.

Second, the district court failed to recognize the transformative nature of the face-swapped photographs and video clips Reface's users can create from works containing an image of Plaintiff, which the First Amendment protects. Using Reface's software, end users transform photos containing Plaintiff's image into a different creative work by replacing his face with their own. In rejecting NeoCortext's First Amendment argument, the district court erroneously relied on a case in which the resulting image was the exact face of a more famous celebrity.

Finally, the complaint's bare factual allegations fail to satisfy the knowledge element to plead a prima facie case for infringement of Plaintiff's right of publicity. At most, the complaint alleges NeoCortext hosted a catalogue of photographs and video clips acquired from third-party internet sources that NeoCortext users could then select and modify. Plaintiff does not allege NeoCortext knew his image was in any of those photographs or videos or that any users would use and distribute those images with a watermark. Absent such allegations, Plaintiff cannot establish a probability of success on the merits.

Accordingly, this Court should reverse the district court's order denying NeoCortext's anti-SLAPP motion and instruct the court below to strike the complaint.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(a) and 1332(d)(2).

On September 5, 2023, the district court denied NeoCortext's motion to dismiss and special motion to strike Plaintiff's right of publicity claim pursuant to Cal. Code Civ. Proc. § 425.16. ER-18. NeoCortext timely noticed this appeal with respect to its special motion to strike on September 8, 2023. ER-56–57. This Court has jurisdiction to review the denial of an anti-SLAPP motion under the collateral order doctrine. *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010).

## STATEMENT OF THE ISSUES

(1)     Whether Plaintiff's California statutory right of publicity claim arises from "an act in furtherance of a person's right of free speech" within the meaning of California's anti-SLAPP statute.

(2)     Whether the use of a watermark on derivative works that users create from copyrighted photos and video clips containing Plaintiff's image is commercial advertising such that Section 301 of the Copyright Act does not preempt Plaintiff's right of publicity claim.

(3)     Whether the Reface app's facilitation of the transformation of photos and video clips containing Plaintiff's image and likeness into a different image is a transformational use that is protected by the First Amendment.

(4)     Whether Plaintiff sufficiently alleged that NeoCortext knowingly used his image and likeness in commercial advertising by creating a library of content for end users to modify from third party sources that included photos and video clips in which Plaintiff appeared.

## PERTINENT STATUTORY PROVISIONS

The pertinent statutory provisions are reproduced in an addendum to this brief.  *See* Ninth Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### A.   NEOCORTEXT AND THE REFACE APP.

NeoCortext operates Reface, an entertainment app that is available for download from the Google Play Store and Apple App Store.   ER-42 (¶ 6).  The Reface app is available as both a free version and a paid version.  ER-44 (¶ 14).  At the time Plaintiff filed this lawsuit, both versions allowed users to access a catalogue of images and short video GIFs of various "actors, musicians, athletes, celebrities, and/or other well-known individuals," ER-40 (¶ 13), from third party sources, including "mybestgif.com, https://tenor.com/, Google Video, [or] Bing Video." ER-44 (¶¶ 13, 15).

Using the photos and video clips in the catalogue, Reface users could create derivative works and digital content by uploading photos of a face, such as their own, from their smartphone and swapping that face for a face in the photo or GIF they select from the catalogue.  ER-41, 44 (¶¶ 2, 15).  The user-created images have both creative and aesthetic value.  Users could share the newly created works with friends and families for their reactions.  ER-41–42, 47(¶¶ 4, 21).

When users created an image using the free version of the Reface app, a watermark that read "made with [the] reface app" appeared on the new image with the Reface logo.  ER-41(¶ 2).  Aside from the watermark, the two versions had the

same basic features that allowed users to manipulate sourced images and create their own expressive derivative works.  ER-44 (¶ 15).

Aside from their expressive value, the new user-created images are distinctive from the original source photos and videos.  Reface requires significant user input during the creation of the resulting face-swapped photos.  Users must take photos and videos from their smartphones, upload them to the Reface app (ER-41) (¶ 2), search and select video clips or photos they want to insert their faces into (ER-45–46) (¶¶ 17-19), and then make selections on the Reface app regarding which face to swap within the photo depicted in the source content (*Id.*).

## B.    PLAINTIFF'S LAWSUIT AND THE DISTRICT COURT'S DENIAL OF NEOCORTEXT'S ANTI-SLAPP MOTION.

Plaintiff was a cast member of several CBS shows, including *Big Brother* and *The Challenge: USA*.  ER-42 (¶ 5).  On April 3, 2023, Plaintiff sued NeoCortext for violation of his statutory right of publicity under Cal. Civ. Code § 3344.  ER-52–53.  At the district court, Plaintiff argued that NeoCortext commercially exploits his and other famous California residents' names, voices, photographs, and likeness by including their photos and video clips in its Reface app.  ER-35–36.  To advance this argument, Plaintiff argued that the watermarks that appear on images created with the free version of the Reface app are commercial advertisements that encourage users to sign up for the paid version to remove the watermark.  ER-32, 35–36.  Plaintiff also argued that the watermarked face-swapped photos and GIFs serve as

6

advertisements to attract new users to the app because NeoCortext knew users would share the watermarked photos with others. ER-35–36.

On May 31, 2023, NeoCortext moved to strike the claim under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, or to dismiss under Fed. R. Civ. P. 12(b)(6). NeoCortext argued that Plaintiff's claim must be dismissed under California's anti-SLAPP statute because the claim was aimed at stifling creative activity that the First Amendment protects. ER-29–31. NeoCortext also argued that Plaintiff failed to sufficiently plead a violation of California's right of publicity statute. ER-25–27.

On September 5, 2023, the district court denied both of NeoCortext's motions. The district court held that NeoCortext met its burden to show that the "act underlying the plaintiff's cause of action" was "itself . . . an act in furtherance of the right of petition or free speech." ER-8–10. The district court found that Reface "gives users a tool for [individual] expression. It is therefore 'conduct in furtherance of' users' free speech rights." ER-10. The district court also found that, given Plaintiff's status as a reality show cast member, NeoCortext's conduct was connected with a "public issue." ER-11. Accordingly, NeoCortext satisfied the first step of the anti-SLAPP analysis.

In the second step of the anti-SLAPP analysis, the district court found that Plaintiff demonstrated a probability of prevailing on his right of publicity claim. The

court rejected NeoCortext's argument that the Copyright Act preempts that claim, finding that NeoCortext used Plaintiff's likeness on advertising and merchandise when it allowed users to create images containing his image. ER-13. The district court also found that the derivative works users create using Reface are not protected by the First Amendment because they are not transformative as a matter of law. ER-17. Finally, the district court found that Plaintiff made a prima facie showing that NeoCortext knowingly used Plaintiff's identity in Reface when it compiled images for the app's catalogue. ER-18.

NeoCortext timely filed its notice of appeal of the district court's denial of its anti-SLAPP motion on September 8, 2023.

## SUMMARY OF THE ARGUMENT

The district court erred in denying NeoCortext's motion to strike Plaintiff's right of publicity claim under California Code of Civil Procedure Section 425.16. While the district court correctly held that Plaintiff's claim arises from conduct in furtherance of the right of speech in connection with an issue of public interest, the court erred in holding that Plaintiff has a probability of prevailing on his right of publicity claim.

Plaintiff cannot show a probability of prevailing on his claim as a matter of law for at least three independent reasons. First, Section 301 of the Copyright Act, 17 U.S.C. § 301, preempts Plaintiff's claim. Plaintiff's claim falls squarely within

the subject matter of copyright because the core focus of his claim is that his likeness has been captured in copyrighted photos and video clips, and the Reface app enables and carries out the creation of derivative works from those photos and video. Plaintiff's scant allegations of advertising and merchandising do not change this result because those allegations are not well-pled. And even if they were well-pled, his claim would still be preempted because the ability to reproduce, create derivative works, and distribute copyrighted works is what is being advertised.

Second, the First Amendment bars Plaintiff's right of publicity claim. The complaint acknowledges that the Reface app provides users with the ability to create expressive derivative works. The new work includes distinctive features that are absent from the original photographs, making the work transformative and entitled to First Amendment protection.

Third, Plaintiff's right of publicity claim also fails because he failed to plead a prima facie violation of the statutory right of publicity. California's right of publicity statute requires a plaintiff to plead and ultimately prove that the defendant "knowingly use[d] [his] name, voice, signature, photograph, or likeness" for advertising purposes. The complaint does not sufficiently allege that NeoCortext knowingly used Plaintiff's name, image or likeness by incorporating a library of images and GIFs from third party sources into a catalogue from which Reface users could choose.

Accordingly, this Court should reverse the district court's denial of NeoCortext's motion.

## STANDARD OF REVIEW

When a district court denies a motion to strike under California's anti-SLAPP statute based on the legal sufficiency of the pleadings, this Court reviews the denial *de novo*. *Jordan-Benel v. Univ. City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017) (citing *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013)).

## ARGUMENT

California discourages "Strategic Lawsuits Against Public Participation, or SLAPPs"—i.e., cases that "'masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so.'" *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 923 (9th Cir. 2022) (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)). To that end, California's anti-SLAPP statute permits a defendant to file a special motion to strike claims "aimed at chilling expression through costly, time-consuming litigation" in their infancy. Cal. Civ. Proc. Code § 425.16(b)(1); *Metabolife Int'l, Inc. v. Wormick*, 264 F.3d 832, 839-40 (9th Cir. 2001). First, the defendant must make a threshold showing "that the cause of action in the challenged SLAPP arises from an act in furtherance of [the] First Amendment 'right of petition or free speech . . . in connection with a public issue.'" *Langer v. Kiser*, 57 F.4th 1085, 1105 (9th Cir.

2023). Once the defendant makes the required showing, the plaintiff must then "demonstrate a probability of prevailing on the challenged claims." *Mindy Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)). Where the defendant brings an anti-SLAPP motion on the pleadings, as NeoCortext did, the analysis of the second step is identical to the Rule 12(b)(6) standard of review. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 832 (9th Cir. 2018).

## I.   APPELLANT DEMONSTRATED THAT PLAINTIFF'S CLAIM ARISES FROM PROTECTED ACTIVITY.

California's anti-SLAPP statute enumerates four categories of protected activity.[1] The moving party's burden at the first step is to identify "what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009, 281 Cal. Rptr. 3d 678, 687 (2021); *see also Park v. Board of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1063, 217 Cal. Rptr. 3d, 130, 134 (2017).

---

[1] These are: (i) written or oral statements in a legislative, judicial, or executive proceeding; (ii) written oral statements in connection with an issue under consideration or review by a legislative, executive, or judicial body; (iii) any written or oral statements made in a public forum in connection with an issue of public interest; and (iv) other conduct in furtherance of the exercise of the right of petition or free speech in connection with an issue of public interest. Cal. Civ. Proc. Code § 425.16(e).

Both the California Legislature and the California Supreme Court have instructed that the anti-SLAPP statute should be broadly construed. In 1997, the Legislature amended the statute to add the express requirement that the statute "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a). And the California Supreme Court has interpreted the statute in a manner that "conforms to the Legislature's express requirement of broad construction." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 60, 124 Cal. Rptr. 2d 507, 513, (2002).

The district court correctly found that NeoCortext demonstrated that Plaintiff's right of publicity claim arises from protected conduct. Plaintiff's right of publicity claim arises from NeoCortext's creation and distribution of a novel application that enables users to engage in creative activities that are protected by the First Amendment. Reface is an entertainment application that allowed users to modify photos or videos clips of public figures and create new content which is conduct in furtherance of NeoCortext's and its users' free speech rights. Cal. Civ. Proc. Code §§ 425.16(e)(3), (e)(4).

Accordingly, the Court should affirm the district court's ruling at step one.

**A.    The District Court Correctly Held That NeoCortext Satisfied the Threshold Showing That Plaintiff's Claim Arises From An Act In Furtherance Of The Right Of Free Speech In Connection With An Issue Of Public Interest.**

Under California's anti-SLAPP statute, an act is in furtherance of the right of free speech if it helps to advance that right or assists in the exercise of that right.

12

The analysis of this factor requires the Court to determine whether the conduct was made in furtherance of free speech rights and, if so, whether that speech was connected to a public issue. ER-7.

### 1. The District Court Correctly Held That NeoCortext's Conduct Was In Furtherance Of Free Speech Rights.

Under the first step, NeoCortext must show that the "act underlying the plaintiff's cause of action" was "itself . . . an act in furtherance of the right of petition or free speech." *Park,* 2 Cal. 5th at 1063 (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78, 124 Cal. Rptr. 2d 519 (2002)). "[T]he focus is on determining what the defendant's activity is that gives rise to his or her asserted liability –and whether that activity constitutes protected speech or petitioning" under the anti-SLAPP statute. *Id.* (quotations omitted). California's anti-SLAPP statute "is not restricted to speech, but expressly applies to *conduct.*" *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166, 1 Cal. Rptr. 3d 536, 542 (2003) (emphasis in original). An act is in furtherance of free speech if the act "helps to advance that right or assists in the exercise of that right." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143, 122 Cal. Rptr. 3d 264, 271 (2011). California courts have "interpreted this piece of the defendant's threshold showing rather loosely," and have held that a "court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis." *Greater Los Angeles Agency on Deafness, Inc., v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (citations omitted).

The use of images and videos of Plaintiff in the Reface entertainment application forms the basis of Plaintiff's right of publicity action. Because Reface allows users to modify photos and video clips to create new images, NeoCortext's distribution and operation of the app furthers both its own and its users' rights of free speech. As the complaint acknowledges, Reface let users create new images and video clips by adding their faces to the faces of persons in images and video clips in a pre-populated catalogue drawn from third-party sources. ER-46 (¶ 19). Users were able to access a catalogue of images and short videos of various celebrities, including actors, musicians, athletes, and other well-known individuals from third-party sources. *Id.* Reface let users transform these images to create humorous and sometimes absurd new works for personal use. ER-41–42, 46–47 (¶¶ 2, 4, 19, 21). Users' creation of artwork is an exercise of free speech. Indeed, visual works, including photographs, "always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection." *White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir. 2007) (quoting *Berry v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996)); *see also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 924 (6th Cir. 2003) ("[t]he protection of the First Amendment . . . includes . . . music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures"); *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings . . . and

14

for this protection to have meaning the Amendment must also protect the act of *creating* that material.") (emphasis added). NeoCortext's operation of Reface is therefore protected First Amendment activity.

### 2. Plaintiff's Claim Concerns An Issue Of Public Interest.

The next inquiry under the first step looks at whether NeoCortext has shown that the speech or conduct, here, the creation of new photos and artwork, relates to an "issue of public interest." Cal. Civ. Proc. Code § 425.16. While California's anti-SLAPP statute does not define "an issue of public interest," California courts have given way to the statute's explicit command that "it shall be construed broadly" and have defined "an issue of public interest" to include an issue: "(1) [] 'concerning a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; or (3) 'a topic of widespread, public interest.'" *Hilton*, 599 F.3d at 906 (citing *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (2003)).

The complaint alleges that Plaintiff is a cast member of several popular CBS shows. *See* ER-42 (¶ 5) ("Plaintiff . . . is a cast member of several CBS shows. He was a finalist in season 23 of Big Brother and Starred on the Challenge: USA."). Thus, Plaintiff is a person in the public eye. Further, the complaint also alleges that the Reface app's database contains images and videoclips of various celebrities, including "thousands of [] actors, musicians, athletes, [] and other well-known

individuals." ER-40, 44.  Accordingly, the alleged use of these images within the app could directly affect many people whose images might also be used within the database.

In sum, as the district court correctly held, NeoCortext has demonstrated that Plaintiff's right of publicity claim arises from an act in furtherance of the right of free speech in connection with an issue of public interest.  Accordingly, the Court should affirm the district court's ruling that NeoCortext satisfies the first step of the anti-SLAPP analysis.

## II.  THE DISTRICT COURT ERRED IN RULING THAT PLAINTIFF DEMONSTRATED A PROBABILITY OF PREVAILING ON HIS RIGHT OF PUBLICITY CLAIM.

Because NeoCortext has demonstrated that Plaintiff's right of publicity claim arises out of protected activity, the burden shifts to Plaintiff to demonstrate a probability of prevailing on his claim.  This burden requires plaintiff to "state[] and substantiate[] a legally sufficient claim."  *Taus v. Loftus*, 40 Cal. 4th 683, 714, 54 Cal. Rptr. 3d 775, 798 (2007). Plaintiff must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff [s] is credited."  *Manufactured Home Communities, Inc. v. City of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011).   The district court erred in finding that Plaintiff meets that burden.

## A.    The Copyright Act Preempts Plaintiff's Claim.

Section 301 of the Copyright Act "preempt[s] and abolish[es] any rights under the common law or statutes of a State that are equivalent to copyright" and that fall "within the scope of the Federal copyright law." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); 17 U.S.C. § 301(a). This Court applies a two-part test to determine whether a state law claim is preempted under the Copyright Act. *Maloney*, 853 F.3d at 1010. First, the Court must determine whether the subject matter of the claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. *Id.* At the second step, the court then considers "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive right of copyright holders." *Id.*

### 1.    Plaintiff's Claim Falls Within The Subject Matter Of Copyright.

Under the Copyright Act, "subject matter of copyright" is defined to include "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). For the purposes of preemption analysis, "the scope of the subject matter of copyright law is broader than the protections it affords." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011); *see also* 4 Nimmer on Copyright § 19D.03[A][2][b] (rev. ed. 2010) ("[T]he shadow actually cast by the [Copyright]

Act's preemption is notably broader than the wing of its protection."). Right-of-publicity claims fall within the subject matter of copyright where, as here, the likeness at issue is fixed in a tangible medium (e.g., a photograph and video). There can be no dispute that the photos and video clips of Plaintiff from the CBS program are within the subject matter of copyright. *See* 17 U.S.C. § 102(a)(5) (explaining that "works of authorship" include "pictorial or graphic" works.). Accordingly, the alleged use falls within the subject matter of copyright. *Maloney*, 853 F.3d at 1011.

The district court adopted Plaintiff's allegation that NeoCortext used his image and likeness in commercial advertising, which is outside the subject matter of copyright. But that allegation is neither supported by the bare factual allegations of the complaint, nor is it consistent with this Court's application of copyright preemption to right of publicity claims. Plaintiff's scant allegations that NeoCortext "commercially exploits [Plaintiff]" and other class members' identities to promote paid subscriptions to the Reface application" does not salvage his claim. ER-47 (¶21). While an additional element is necessary to qualitatively distinguish a right of publicity claim from a copyright claim, this Court has made clear that "the mere presence of an additional element [such as] ('commercial use') in section 3344 is not enough to qualitatively distinguish [a] right of publicity claim from a claim in copyright." *Laws v. Sony Music Ent., Inc*., 448 F.3d 1134, 1144 (9th Cir. 2006).

Rather, the preemption analysis turns on how the name and likeness are being used (i.e., whether used on merchandise and advertising). *Maloney*, 853 F.3d at 1012.

Plaintiff's effort to avoid copyright preemption relies on a single factual allegation: that a watermark stating "made with the Reface app" on the face-swapped derivative work created by a free version user is commercial advertising. Specifically, Plaintiff alleges that "NeoCortext used and/or uses Mr. Young and the members of the putative Class's name, voice, signature, photograph or likeness on its Teaser Face Swaps, which contain watermarks." ER-52 (¶ 40). Plaintiff further alleges that these "teaser face swaps commercially exploit Mr. Young and other class members' identities to promote paid subscriptions to the Reface application." ER-47 (¶ 21). These allegations establish nothing more than that NeoCortext displayed and reproduced copyrighted works as part of the process of creating derivative works.

These allegations are legal conclusions couched in the restatement of the legal standard with an allegation that NeoCortext uses Plaintiff's name and likeness for advertising. The complaint does not say ***how*** Plaintiff's name and likeness are used independent of the display and reproduction of the copyright photos and video clips to create derivative works. *See Andersen v. Stability AI Ltd.,* No. 23-cv-00201-WHO, 2023 WL 7132064, at *12 (N.D. Cal. Oct. 30, 2023) (granting motion to dismiss right of publicity claim because plaintiffs failed to "provide[] any facts specific to the *three named plaintiffs* to plausibly allege that any defendant has used a named

plaintiff's name to advertise, sell, or solicit purchase of DreamStudio, DreamUp or the Midjourney product."). Nor are there any allegations regarding how the alleged use of Plaintiff's name or likeness in the *Reface* app would produce images or "advertisements" similar enough to Plaintiff's attributes that people familiar with Plaintiff and the roles for which he is known could believe that Plaintiff created or endorsed the image. Indeed, the complaint acknowledges the distinct and transformative nature of the copyrighted photos and video clips within the Reface app. ER-40–41, 47 (¶¶ 1, 4, 21). Thus, Plaintiff's threadbare allegations of the claim elements cloaked as "facts" are insufficient as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need not accept as true legal conclusions, unwarranted factual inference, or "[t]hreadbare recitals of the elements of a cause of action"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Plaintiff's claim is also preempted because the alleged advertisements are not separate from the copyrighted work itself. In *Maloney*, this Court identified the types of unauthorized use of one's name and likeness in advertisements that would not be preempted under the Copyright Act—all which were based on advertising a product or service apart from the copyrighted work. These include an imitation of Bette Midler's voice to advertise Ford cars; an imitation of Tom Waits' voice to advertise

*Doritos*; a robot resembling Vanna White to advertise televisions; robots resembling characters from the TV show *Cheers* used to draw customers to a bar; a photograph of a model used to advertise hair products; a photograph of surfers used to advertise and sell Abercrombie clothes; images of The Three Stooges used to sell t-shirts; use of an announcer's voice to promote a video game; and use of student-athlete likenesses to sell a video game. *See Maloney*, 853 F.3d at 1018, n.13 (citations omitted). None of Plaintiff's allegations fall into any of these categories. Indeed, as in *Maloney*, the authorities relied on by Plaintiff and the district court to avoid preemption solely concern the use of a plaintiff's image, name, or likeness to sell something else. The only thing alleged to be advertised is an app that can make derivative works of copyrighted photos and video clips.

Plaintiff's right of publicity claim does not differ materially from the claim presented in *Maloney*, which this Court held was preempted by the Copyright Act. *Id.* at 1011-12. In *Maloney*, college athletes sued the operator of a website that displayed and sold photos of plaintiffs and other athletes. *Id.* at 1011-12. The defendant had a license to the photos from the NCAA. *Id.* The plaintiffs argued that their right of publicity claim was not preempted by the Copyright Act because the defendant had made a commercial use of their images. *Id.* This Court rejected plaintiffs' argument and held that their right of publicity claim was preempted because the defendant displayed and sold copyrighted photos, thereby holding that

21

their right of publicity claims overlapped completely with the rights of the copyright owner. *Id.*

While Plaintiff's complaint incants the words "advertising" and "commercial," the essence of his claim is the same as in *Maloney*—NeoCortext displays photos or video clips of him from CBS shows, which users can view, make derivative works, and then distribute for their personal use. Indeed, the district court recognized Plaintiff's allegation that the face-swapped photo derived from the original photo of Plaintiff is the "paid product." ER-5, 13. Those rights are the same rights that a copyright owner enjoys.

The district court's reasoning to distinguish the facts in *Maloney* from Plaintiff's claim is circular. The district court reasoned that "the Complaint sets forth a use of [Plaintiff's] name and likeness outside of the photograph itself; according to the Complaint, Reface uses [Plaintiff's] name and likeness to attract users to the free version of the Reface application with the intent of having some users purchase a subscription to Reface." ER-14. But the subscription gives users the ability to make derivative works of the photos and video clips and then distribute them without a watermark. The same could be said for the photos at issue in *Maloney*. The use of their images on the website at issue was for the purpose of advertising the sale of reproductions of the images. Indeed, taken to its logical conclusion, the district court's reasoning would grant any actor the ability to abuse

California's right of publicity statute to bar a video streaming service from using trailers and photo stills of movies to advertise the sale of subscriptions to the service. Copyright preemption is not so limited, and the district court's ruling was error.

Plaintiff and the district court relied primarily on this Court's opinion in *Downing* to argue that the use of his image in clips from *Big Brother* is a commercial advertisement. But the use of photos containing plaintiff's image in a clothing catalogue in *Downing* is categorically different than in Reface. In *Downing*, this Court held that the Copyright Act did not preempt Plaintiff's right of publicity claim against a clothing retailer that used Plaintiff's name and photos of him to promote a surf-themed clothing line in a catalogue that was the company's "largest advertising vehicle." *Id.* at 999, 1000. The defendant also created t-shirts, exactly like those worn by the plaintiff in the photographs and advertised them for sale in the catalogue. *Id.*

Here, on the other hand, the only thing being allegedly "advertised" by photos and video clips of television shows in which Plaintiff appeared is the ability to view, make face-swap derivative works, and distribute those works to others. Because the copyrighted work *is* the alleged product, the Copyright Act preempts Plaintiff's publicity claim. *See Laws*, 448 F.3d at 1141-43 (court must inquire whether the right of publicity claim targets mere use of the likeness in the work "itself, as a creative work of authorship," as opposed to its use to advertise or sell products separate from the copyrighted work).

The district court also found persuasive an Illinois district court's determination in *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 594 (N.D. Ill. 2021), that the Copyright Act did not preempt plaintiff's claim under Illinois' right of publicity statute. ER-14–15. But there, plaintiff based his claim on defendant's use of a photo of plaintiff from a database of yearbook photos in email advertisements the defendant sent to promote its subscription genealogy services. *Id.* at 593-94. Here, Plaintiff nowhere alleges that NeoCortext sent email advertisements or any other advertisements using his photo to advertise other services. He alleges only that Reface *users* could distribute face-swapped photos and video clips, and that the presence of a watermark could encourage others to use a paid version of the app to create face swaps. *Bonilla* is therefore inapposite.

### 2. The Rights Asserted Under State Law Are Equivalent To The Rights Within The Scope of Copyright.

At the second step in the copyright preemption analysis, courts must "determine whether the rights plaintiffs assert under state law are 'equivalent to the rights within the general scope of copyright as specified by section 106 of the Copyright Act.'" *Maloney*, 853 F.3d at 1019 (citation omitted). Section 106 of the Copyright Act affords copyright owners the "exclusive rights" to display, perform, reproduce, distribute, or create derivative copies of their copyrighted works. 17 U.S.C. § 106. To survive preemption, the state cause of action "must protect

rights which are qualitatively different from the copyright rights" and "have an extra element which changes the nature of the action." *Id.* (citation omitted).

Plaintiff bases his right of publicity claim on the Reface app's display, distribution and enablement of derivative works of photos and video clips, which are equal to rights protected by copyright. Indeed, the core of Plaintiff's claim focuses on NeoCortext's alleged reproduction, display and creation of derivative works of videos and images of Plaintiff in scenes from the CBS television program, *Big Brother*. This is clear from the allegations in Plaintiff's complaint, which assert that NeoCortext violated Plaintiff's right of publicity by displaying video clips and photographs in which he appears (ER-45, 47) (¶¶ 18-22); displaying those photographs in its online "Pre-sets" database of photographs (ER-49, 52) (¶¶ 24, 39); and allowing users to "generate [] a new watermarked image or video where the individual depicted in the Pre-sets catalogue has [his or her] face swapped" with the face that was uploaded by the free user (ER-46) (¶ 19).

Thus, Plaintiff's theory is that NeoCortext uses expressive works containing his image and allows users to create and distribute derivative works from that work without his permission, both of which are exclusive rights under copyright law.

Accordingly, this Court should reverse the district court's ruling that Plaintiff's right of publicity claim is not preempted by the Copyright Act.

**B.    Reface And Its Uses Are Creative, Transformative Expression That The First Amendment Protects.**

**1.    California's Right of Publicity Statute Is a Content-Based Restriction on Speech That Is Subject to Strict Scrutiny Review.**

The First Amendment, which is applicable to California state law through the Fourteenth Amendment, forbids laws "abridging the freedom of speech." U.S. Const. amend. I; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016).   The California Supreme Court has acknowledged that the "right of publicity threatens two purposes of the First Amendment: (1) preserving an uninhibited marketplace of ideas; and (2) furthering the individual right of self-expression." *Winter v. DC Comics*, 30 Cal. 4th 881, 887 (2003).   Right of publicity claims implicate specific First Amendment issues in matters involving celebrities given that "celebrities take on personal meanings to many individuals in the society the creative appropriation of celebrity images can be an important avenue of individual expression." *Id.*  (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 397 (2001)).

As this Court has held, California's right of publicity statute "clearly restricts speech based upon its content." *Sarver*, 813 F.3d at 903.  As such, it is "presumptively unconstitutional" and is justified only if it is "narrowly tailored to serve compelling state interests." *Id.* (quoting *Reed*, 576 U.S. at 163).  In *Sarver*, this Court recounted those cases where it had found a compelling state interest justifying application of

California's right of publicity law against a First Amendment challenge as involving speech that "either appropriates the economic value of a performance or persona or seeks to capitalize off a celebrity's image in commercial advertisements." *Id.* at 905. As discussed above, the "catalogue" images and video clips from *Big Brother* are not advertisements proposing a commercial transaction. They are content that users can modify to create a new expressive work. Nor are the resulting face-swapped images that users create "advertisements" that NeoCortext distributes to promote its service. As such, Plaintiff's claims should be entitled to the highest level of constitutional scrutiny.

> **2. Even Under the Intermediate Transformative Use Analysis, Reface is Entitled to First Amendment Protection From Plaintiff's Right of Publicity Claim.**

Even if intermediate scrutiny were to apply, the First Amendment precludes Plaintiff's claim. To balance California's statutory right of publicity with the First Amendment's protections, courts apply the "transformative use" test, which asks "whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation." *Winter*, 30 Cal. 4th at 885 (2003) (quoting *Comedy III Prods., Inc.*, 25 Cal. 4th at 391 (2001)). "If distinctions exist, the First Amendment bars claims based on appropriation of the plaintiff's identity or likeness; if not, the claims are not barred." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61, 50 Cal. Rptr. 3d 607, 617 (2006).

27

Applied correctly, the test is "whether a product containing a celebrity's likeness is so transformed that it has become primary the defendant's own expression." *Comedy III Prods.* 25 Cal. 4th at 389. Expressive works where celebrity likeness is "one of the 'raw materials' from which an original work is synthesized" are protected. *Id.* at 406.

The district court, while acknowledging that the new image "may ultimately be deemed transformative as a matter of fact" did not find that the images created using Reface are transformative as a matter of law. ER-17. This ruling is inconsistent with California courts' application of the transformative use test and should be reversed.

In *Winter*, the California Supreme Court found that the depiction of plaintiff musicians in comic books as cartoony, worm-like creatures whose faces resembled the plaintiff musicians was sufficiently transformative. 30 Cal. 4th at 881. The court emphasized that the plaintiffs' likenesses were "merely part of the raw materials from which the comic books were synthesized." *Id.* And in *Kirby*, the Court of Appeal similarly found that a video game character which bore similarities was transformative as the character was a fanciful, Japanese anime style news reporter from outer space. 144 Cal. App. 4th at 59-61. There, the Court of Appeal observed that the transformative use test "requires the court to examine and compare the allegedly

expressive work with the images of the plaintiff to discern if the defendant's work contributes significantly distinctive and expressive content." *Id.* [2]

Here, as in *Winter* and *Kirby*, the Reface app uses photos and GIFs containing Plaintiff's image as the raw materials for a transformative use, resulting in a new image with his face replaced by another face. The Reface app allowed users to transform photos or videos in which Plaintiff's image appears into a new work in which Plaintiff's face does *not* appear. That is the very purpose of the app—the transformation of one face into a different face. Across the complaint, Plaintiff repeatedly acknowledges this transformative purpose, alleging the app "uses an artificial intelligence algorithm to allow users to swap faces with actors, musicians, athletes, celebrities, and/or other well-known individuals." ER-40. The complaint also acknowledges that the generated derivative works have "aesthetic value" which users use in "creative ways" like humor or surprise. ER-41, 47 (¶¶ 4, 21). Because the images and video clips of Plaintiff are sourced from online public sources and

---

[2] The District Court observed that *Winter* and *Kirby* were resolved at the summary judgment stage, but the California Supreme Court recognized that the "unnecessarily protracted litigation" of right of publicity claims has a "chilling effect upon the exercise of First Amendment rights" and encouraged the "speedy resolution of cases involving [right of publicity claims]." *Winter*, 30 Cal. 4th at 891. The California Supreme Court also instructed that these claims maybe be applied as a matter of law by viewing the work in question and applying the transformative use test "even [on] demurrer." *Id.* Thus, this matter may, and should, be dismissed at this stage of litigation.

used merely as the "raw material" which is then used in the creative works generated by users of the Reface application, the output is transformative.

In its application of the transformative use analysis, the district court misapplied this Court's decision in *Hilton v. Hallmark*. In *Hilton*, Hallmark designed, marketed, and sold a greeting card which used plaintiff Paris Hilton's likeness in a recreated scene from the popular television show, *The Simple Life*. *Hilton*, 599 F.3d at 911. The card included an oversized picture of Hilton's head, used her name in the main text of the card, and had Hilton depicted in the same scenario she was depicted in the show. *Id.*

Here, Plaintiff does not, and cannot, allege that NeoCortext is using his image to sell a product like Hallmark's greeting card that uses his name, photo, or likeness. Moreover, in *Hilton,* the only transformation was to make Hilton's face larger and more prominent. The greeting card capitalized on Hilton's image and references to a specific scene within her reality TV oeuvre. Reface, on the other hand, removes Plaintiff's face in the transformed face-swapped output. Additionally, NeoCortext is not selling these user-created face-swapped works. While an expressive work produced by a user of the Reface app may have been created using raw materials featuring Plaintiff's likeness, unlike the card in *Hilton*, the end result does not include a literal depiction of Plaintiff.

Accordingly, this Court should reverse the district court's ruling and find that, as alleged in the complaint, Reface app is NeoCortext's protected expression and is used by users to create protected expression.

### C. Plaintiff Failed To Plead A Prima Facie Violation Of His Right of Publicity.

This Court may reverse the district court's ruling for the independent reason that Plaintiff failed to allege a prima facie violation of his publicity rights. To plead and ultimately establish a claim for violation of California's statutory right of publicity, Plaintiff must allege that NeoCortext "***knowingly*** uses [his] name, voice, signature, photograph, or likeness" for advertising purposes. Cal. Civ. Code § 3344(a) (emphasis added).

Plaintiff failed to allege knowing use of his name, image, or likeness. Instead, the complaint alleges that source content used by the Reface application comes from various third-party libraries such as "mybestgif.com, https://tenor.com/, Google Video, and Bing Video." ER-44 (¶ 15). Nothing in the complaint indicates that NeoCortext knew photos or video clips of Plaintiff were included in the database. Indeed, the complaint fails to even mention the words "knowingly," "knew," or any variation of the words outside of reciting the legal standard for pleading a violation of the statutory right of publicity. This is insufficient to state a claim. *Twombly*, 550 U.S. at 555 (mere legal conclusions or recitation of elements of a claim, even if dressed as factual allegations, cannot state a claim).

31

Additionally, Plaintiff does not sufficiently plead that NeoCortext even uses his name in the Reface app. Nor does he allege any basis for the Court to deduce that an individual's name would be utilized, or necessary, for an application for photographs and video clips. While the complaint alleges that "[s]everal animated images of Mr. Young can be found using the Reface application's search bar," ER-45 (¶ 18), the complaint does not allege that users can search for Plaintiff by name, or whether video clips in which he appears are returned by a search for "Big Brother," which is a far more likely search given the show's comparatively greater name recognition than Plaintiff's. Even if users could search for Plaintiff by name, the complaint does not allege the search is of data maintained by NeoCortext instead of third-party sources, like Tenor and Google Video.

Lastly, Plaintiff also fails to sufficiently allege that his name or likeness is used in advertising. *See supra* Section II.A.1.

Accordingly, Plaintiff failed to sufficiently allege a prima facie violation of his right of publicity. Thus, the Court should reverse the district court's ruling.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the ruling of the district court and dismiss Plaintiff's complaint.

Dated: December 14, 2023   FENWICK & WEST LLP


By: _/s/Tyler G. Newby_____
   Tyler G. Newby

   Attorneys for Defendant-Appellant
   NEOCORTEXT, INC.

33

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned counsel for Defendant-Appellant NeoCortext, Inc. is not aware of any related cases pending before this Court.

Dated: December 14, 2023     FENWICK & WEST LLP

            By: */s/Tyler G. Newby*
              Tyler G. Newby

              Attorneys for Defendant-Appellant
              NEOCORTEXT, INC.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**     23-55772

I am the attorney or self-represented party.

**This brief contains**     7,683     **words,** including     n/a     words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**     *s/ Tyler G. Newby*          **Date**     **December 14, 2023**
*(use "s/[typed name]" to sign electronically-filed documents)*

35

**ADDENDUM OF PERTINENT STATUTORY PROVISIONS**

## ADDENDUM TABLE OF CONTENTS

**Page**

17 U.S.C. § 102 .................................................................................................38

17 U.S.C. § 103 .................................................................................................39

17 U.S.C. § 106 .................................................................................................39

17 U.S.C. § 301 .................................................................................................40

Cal. Civ. Code § 3344 .......................................................................................43

Cal. Civ. Proc. Code § 425.16 ..........................................................................46

U.S. Const., amend. I ........................................................................................50

U.S. Const., amend. XIV ...................................................................................50

**17 U.S.C. § 102**

**(a)** Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

**(1)** literary works;

**(2)** musical works, including any accompanying words;

**(3)** dramatic works, including any accompanying music;

**(4)** pantomimes and choreographic works;

**(5)** pictorial, graphic, and sculptural works;

**(6)** motion pictures and other audiovisual works;

**(7)** sound recordings; and

**(8)** architectural works.

**(b)** In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

**17 U.S.C. § 103**

(a)     The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b)     The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

**17 U.S.C. § 106**

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)     to reproduce the copyrighted work in copies or phonorecords;

(2)     to prepare derivative works based upon the copyrighted work;

(3)     to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

**(4)**    in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

**(5)**    in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

**(6)**    in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

## 17 U.S.C. § 301

**(a)**    On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

**(b)**    Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

(1)     subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

(2)     any cause of action arising from undertakings commenced before January 1, 1978;

(3)     activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106; or

(4)     State and local landmarks, historic preservation, zoning, or building codes, relating to architectural works protected under section 102(a)(8).

(c)     Notwithstanding the provisions of section 303, and in accordance with chapter 14, no sound recording fixed before February 15, 1972, shall be subject to copyright under this title. With respect to sound recordings fixed before February 15, 1972, the preemptive provisions of subsection (a) shall apply to activities that are commenced on and after the date of enactment of the Classics Protection and Access Act. Nothing in this subsection may be construed to affirm or negate the preemption of rights and remedies pertaining to any cause of action arising from the nonsubscription broadcast transmission of sound recordings under the common law or statutes of any State for activities that do not qualify as covered activities under chapter 14 undertaken during the period between the date of enactment of the

41

Classics Protection and Access Act and the date on which the term of prohibition on unauthorized acts under section 1401(a)(2) expires for such sound recordings. Any potential preemption of rights and remedies related to such activities undertaken during that period shall apply in all respects as it did the day before the date of enactment of the Classics Protection and Access Act.

(d)     Nothing in this title annuls or limits any rights or remedies under any other Federal statute.

(e)     The scope of Federal preemption under this section is not affected by the adherence of the United States to the Berne Convention or the satisfaction of obligations of the United States thereunder.

(f)     (1)     On or after the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, all legal or equitable rights that are equivalent to any of the rights conferred by section 106A with respect to works of visual art to which the rights conferred by section 106A apply are governed exclusively by section 106A and section 113(d) and the provisions of this title relating to such sections. Thereafter, no person is entitled to any such right or equivalent right in any work of visual art under the common law or statutes of any State.

(2)     Nothing in paragraph (1) annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

**(A)**   any cause of action from undertakings commenced before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990;

**(B)**   activities violating legal or equitable rights that are not equivalent to any of the rights conferred by section 106A with respect to works of visual art; or

**(C)**   activities violating legal or equitable rights which extend beyond the life of the author.

## Cal. Civ. Code § 3344

**(a)**   Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to

present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

**(b)** As used in this section, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable.

**(1)** A person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use.

**(2)** If the photograph includes more than one person so identifiable, then the person or persons complaining of the use shall be represented as individuals rather than solely as members of a definable group represented in the photograph. A definable group includes, but is not limited to, the following examples: a crowd at any sporting event, a crowd in any street or public building, the audience at any theatrical or stage production, a glee club, or a baseball team.

**(3)** A person or persons shall be considered to be represented as members of a definable group if they are represented in the photograph solely as a

result of being present at the time the photograph was taken and have not been singled out as individuals in any manner.

**(c)** Where a photograph or likeness of an employee of the person using the photograph or likeness appearing in the advertisement or other publication prepared by or in behalf of the user is only incidental, and not essential, to the purpose of the publication in which it appears, there shall arise a rebuttable presumption affecting the burden of producing evidence that the failure to obtain the consent of the employee was not a knowing use of the employee's photograph or likeness.

**(d)** For purposes of this section, a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a).

**(e)** The use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

**(f)** Nothing in this section shall apply to the owners or employees of any medium used for advertising, including, but not limited to, newspapers, magazines, radio and television networks and stations, cable television systems, billboards, and transit ads, by whom any advertisement or solicitation in violation of this section is published or disseminated, unless it is established that such owners or employees had knowledge of the unauthorized use of the person's name, voice, signature, photograph, or likeness as prohibited by this section.

**(g)** The remedies provided for in this section are cumulative and shall be in addition to any others provided for by law.

**Cal. Civ. Proc. Code § 425.16**

**(a)** The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

**(b)** **(1)** A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue

shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2)   In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3)   If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)   (1)   Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(2)   A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if

that cause of action is brought pursuant to Section 11130, 11130.3, 54960, or 54960.1 of the Government Code, or pursuant to Chapter 2 (commencing with Section 7923.100) of Part 4 of Division 10 of Title 1 of the Government Code. Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant to Section 7923.115, 11130.5, or 54960.5 of the Government Code.

(d)     This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e)     As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

**(f)**     The special motion may be filed within 60 days of the service of

the complaint or, in the court's discretion, at any later time upon terms it deems

proper. The motion shall be scheduled by the clerk of the court for a hearing not

more than 30 days after the service of the motion unless the docket conditions of the

court require a later hearing.

**(g)**     All discovery proceedings in the action shall be stayed upon the

filing of a notice of motion made pursuant to this section. The stay of discovery shall

remain in effect until notice of entry of the order ruling on the motion. The court, on

noticed motion and for good cause shown, may order that specified discovery be

conducted notwithstanding this subdivision.

**(h)**     For purposes of this section, "complaint" includes "cross-

complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner,"

and "defendant" includes "cross-defendant" and "respondent."

**(i)**     An order granting or denying a special motion to strike shall be

appealable under Section 904.1.

**(j)**     **(1)**     Any party who files a special motion to strike pursuant to

this section, and any party who files an opposition to a special motion to strike, shall,

promptly upon so filing, transmit to the Judicial Council, by email or facsimile, a

copy of the endorsed, filed caption page of the motion or opposition, a copy of any

related notice of appeal or petition for a writ, and a conformed copy of any order

issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

**(2)**   The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media."

**U.S. Const., amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**U.S. Const., amend. XIV**

**Section 1.**   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 2.**   Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.  But when the right to vote at any election for the

choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Section 3.**   No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Section 4.**   The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of

insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Section 5.** The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.